# HONAKER ET UX. *v.* W. C. AND A. N. MILLER DEVELOPMENT COMPANY

[No. 55, September Term, 1976.]

*Decided November 4, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Ferdinand J. Mack*, with whom were *Shadoan & Mack* on the brief, for appellants.

*William H. Clarke*, with whom were *W. Barry Wraga, Richard W. Galiher, Jr.,* and *Galiher, Clarke, Martell & Donnelly* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Over half a century ago the General Assembly enacted the Workmen's Compensation Act, withdrawing from private controversy all phases of extra-hazardous employments. The Act provided sure and certain relief for workmen injured in such employments and for their families and dependents, regardless of questions of fault and to the exclusion of every other remedy. Preamble, Acts 1914, ch. 800. Two years later, coverage under the Act was broadened by providing a new remedy for an employee who would otherwise be faced with the burden of the sometimes complex question of who was his employer. Acts 1916, ch. 597, § 60A, now codified as Maryland Code, (1957, 1964 Repl. Vol.), Art. 101, § 62 in pertinent part provided:

"When any person as a principal contractor,

undertakes to execute any work which is part of his trade, business or occupation which he has contracted to perform and contracts with any other person as subcontractor, for the execution by or under the subcontractor, of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the execution of the work any compensation under this article which he would have been liable to pay if that workman had been immediately employed by him; . . . ."

The purpose of § 62 was discussed at length in *State v. Bennett Building Co.*, 154 Md. 159, 161-162, 140 A. 52, 53 (1928):

"It is common practice in certain trades for one party to agree for a reward to complete a certain work or undertaking, and then to enter into subcontracts with various parties providing for the execution by them respectively of specified parts of the whole work or undertaking, so that the whole or part thereof would be done by such subcontractors and their assistants. In this manner the principal contractor would avoid in part the responsibility for accidents happening in the carrying out of the work or undertaking. If this responsibility were so shifted upon parties too weak financially to meet it, and who had not secured compensation to their employees in one of the ways required by the statute, an injured workman, proceeding at common law or under the Workmen's Compensation Act, would obtain neither compensation nor damages. Furthermore, difficult questions arose with reference to whether the workman was the servant of the principal contractor rather than of his immediate employer, depending largely upon who had power to hire and discharge, to direct and control the workmen, and a variety of other circumstances. In order to obviate these contingencies, and more certainly to assure the

workman his contemplated compensation, the statute has imposed, under a certain state of circumstances, a liability to pay upon the principal contractor, although he might not have been held at common law the employer of the injured workman."

The Court spelled out the impact of the statute:

"The effect of [§ 62], when brought into operation through the designated state of circumstances, is to impose the absolute liability of an employer upon the principal contractor, when he was not in law the employer of the injured workman. The result then is that where the prescribed conditions exist, the principal contractor becomes by the act the statutory employer of any workman employed in the excution of the work." *Id.* at 162, 140 A. at 53.

The relation established by the statute was described in terms of two employers of the same employee: "One was [the employee's] immediate employer, the subcontractor, whose relation was founded in contract; and the second was his more remote statutory employer, the principal contractor, whose status, with the rights and liabilities growing thereout, was created and determined by law." *Id.* at 165, 140 A. at 54. It has become quite common to speak of the principal contractor's liability as that of the "statutory employer" to a "statutory employee." 1A *A. Larson, The Law of Workmen's Compensation* § 49.11. This appeal requires us to ascertain whether the relation of statutory employer-statutory employee existed between W. C. and A. N. Miller Development Company (Miller), appellee, and Dallas A. Honaker, an appellant.

The facts are not complicated. Miller was erecting a house on property it owned in Montgomery County, Maryland. It entered into a contract with Orndorff and Spaid, Inc. (Orndorff) whereby Orndorff agreed to furnish all labor and materials to install a roof on the house, gutters and downspouts, and a fireproof garage door, for a specified sum. Honaker was an employee of Orndorff. While working

on the installation of the roof, Honaker sustained an accidental personal injury, alleged to be due to the negligence of Miller. Orndorff was covered by workmen's compensation insurance on the date of the accident under a policy issued by the State Accident Fund of Maryland. Honaker received workmen's compensation benefits from Orndorff through the Fund as a result of his injury.

Honaker and his wife filed a tort action in the Circuit Court for Montgomery County against Miller. In Count One of the declaration, Honaker, to his own use and to the use of the State Accident Fund, claimed damages for injury suffered and expenses incurred due to the negligence of Miller. In Count Two, Honaker and his wife claimed damages for loss of consortium. Miller pleaded the general issue and filed a motion for summary judgment, alleging that there was no dispute as to the facts and claiming that Honaker was the statutory employee of Miller so that the exclusive remedy was workmen's compensation. Honaker opposed the motion, contending that Miller was "not a person or entity entitled to the benefit of the Workmen's Compensation defense asserted. . . ." [1] Upon hearing, the court below concluded that Miller and Honaker stood in a statutory employer-statutory employee relation, and, therefore, Miller was immune from suit. It granted motion for summary judgment and dismissed the claim "with prejudice." Judgment for costs was entered in favor of Miller. The Honakers appealed to the Court of Special Appeals.[2] Code (1974), Courts and Judicial Proceedings

---

1. Among the grounds given by Honaker in opposing the motion for summary judgment was that the defense of compliance with the Workmen's Compensation Act could only be raised by special plea. See Salvuca v. Ryan & Reilly Co., 129 Md. 235, 98 A. 675 (1916). Miller subsequently amended his plea accordingly and filed an affidavit and various documents which the court below considered in reaching a determination that there had been compliance with the Workmen's Compensation Act and that Honaker had in fact received benefits thereunder.

2. The order of the court below was dated 10 February 1976 and filed 13 February 1976. Judgment was entered the latter date. The appeal, filed 4 March 1976, was "from the Order of February 10, 1976, granting defendant's motion for summary judgment." As it was filed subsequent to the entry of the judgment and within the time prescribed by Maryland Rule 1012, § a, we treat it as an appeal from the judgment entered.

Article, § 12-301. We required by writ of certiorari that the case be certified to us for review and determination before decision by the Court of Special Appeals. Code (1974), Courts Art. § 12-203.

The precise issue for decision is whether the trial court was correct in granting summary judgment. Maryland Rule 610, § d 1 spells out two requirements for the grant of the judgment. It provides that the judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show (1) that there is no genuine dispute as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of law.[3]

The first requirement for rendering summary judgment was met. As we have indicated, the question raised by this appeal is whether the relation of statutory employer-statutory employee existed between Miller and Honaker

---

3. We discussed summary judgment procedure fully in Lynx, Inc. v. Ordnance Products, 273 Md. 1, 327 A. 2d 502 (1974). We said, at 7-8, 327 A. 2d 508-509: "The function of the summary judgment procedure is not to try the case or decide the issues of fact raised; it is merely to determine whether or not there is an issue of fact to be tried and if there is none, to cause judgment to be rendered accordingly. . . . At the trial level, the purpose of the hearing on the motion is to decide whether a real dispute as to material facts does exist; if the pleadings, depositions, admissions and affidavits (if any) show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment should be granted. . . .

A bare allegation in a general way that there is a dispute as to material facts is never sufficient to defeat a motion for summary judgment. . . . General allegations which do not show facts in detail and with precision are insufficient to prevent the entry of summary judgment.

Even where it is shown that there is a dispute as to a fact, when the resolution of that factual dispute is not material to the controversy, such dispute does not prevent the entry of summary judgment. . . . Such a material fact must be one, the resolution of which will somehow affect the outcome of the case.

\* \* \*

In reviewing the propriety of the grant of a summary judgment we are concerned primarily with deciding whether a factual issue which was material to the resolution of the controversy existed and whether the trial judge was legally correct. . . . Where the record shows that there was no such genuine dispute as to any material fact necessary to resolve the controversy as a matter of law, and it is shown that the movant is entitled to judgment, the entry of summary judgment is proper. . . ." (citations omitted)

in the contemplation of Art. 101, § 62. The facts we hereinbefore recounted were shown by the pleadings, depositions, admissions and affidavits on file. The trial court found, and we agree, that, with respect to the question raised, there is no genuine dispute as to any material fact. This leaves the issue of the propriety of the rendering of summary judgment dependent upon the second requirement, namely, that the moving party, Miller, was entitled to a judgment as a matter of law. He would be so entitled if he were the statutory employer of Honaker for then Honaker's exclusive remedy would be under the Act, and Miller would be immune from a tort action for alleged negligence under the common law. "If an employer is within the [Workmen's Compensation] act to bear its liabilities, he must remain to be accorded its immunities, in the absence of clearly expressed legislative intention to the contrary." *State v. Bennett Building Co., supra,* at 168, 140 A. at 55. Under Art. 101, § 15, liability prescribed by the Act is exclusive. *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 13, 155 A. 2d 691, 693 (1959). On the other hand, if Miller were not the statutory employer of Honaker, Miller would be a third party in the contemplation of Art. 101, § 58, and under that statute Honaker could maintain his tort action at law. *Gray v. State Rds. Comm'n.,* 253 Md. 421, 252 A. 2d 810 (1969). In cases involving a principal contractor-subcontractor relation, for authority that a plaintiff's exclusive remedy is under the Act if the defendant is the statutory employer of the plaintiff, *see Roland v. Lloyd E. Mitchell, Inc., supra; State v. City of Baltimore,* 199 Md. 289, 86 A. 2d 618 (1952); *State v. Bennett Building Co., supra.* For authority that a plaintiff may maintain a tort action at law if the defendant is not the statutory employer of the plaintiff, *see Long Co. v. State Accident Fund,* 156 Md. 639, 144 A. 775 (1929); *Ryan v. Bethlehem Sparrows Point Shipyard, Inc.,* 209 F. 2d 53 (4th Cir. 1953). This brings us to the point of determining whether, on the undisputed facts, Miller and Honaker stood in the position of statutory employer-statutory employee.

It is manifest on the face of § 62 of Art. 101, that in order to invoke its provisions there must be:

(1) a principal contractor [4]

(2) who has contracted to perform work

(3) which is a part of his trade, business or occupation; and

(4) who has contracted with any other party as a subcontractor for the execution by or under the subcontractor of the whole or any part of such work.

For the purpose of decision, we assume that the work covered by the contract between Miller and Orndorff was work which was a part of Miller's business. See 1A *A. Larson, The Law of Workmen's Compensation*, § 49.12 (1973). We look, therefore, to the other requirements. As the statute speaks in terms of principal contractor and subcontractor, it clearly requires two contracts, one between the principal contractor and a third party whereby it is agreed that the principal contractor will execute certain work for the third party, and another between the principal contractor and a person as subcontractor whereby the subcontractor agrees to do the whole or part of such work for the principal contractor. The definition of subcontractor and subcontract denotes the existence of two contracts. *Roland v. Lloyd E. Mitchell, Inc., supra*, at 18-19, 155 A. 2d at 696, quotes two definitions with approval. One is from *Holt & Bugbee Co. v. City of Melrose*, 311 Mass. 424, 426, 41 N.E.2d 562, 563 (1942): "A subcontractor is 'one who has entered into a contract, express or implied, for the performance of an act, with a person *who has already contracted for its performance*'." The other is from *Radin's Law Dictionary* where subcontract is defined as "A contract with a person *who owes labor or services under another contract*, to perform some or all of the services or labor due." (emphasis in both quotations added). These definitions,

---

4. "Principal contractor" is not synonymous with "general contractor". In Kegley v. Vulcan Rail & Constr. Co., 203 Md. 476, 101 A. 2d 822 (1954), we rejected an attempt to read the words "principal contractor" in the statute as referring to the general contractor. We said, at 480, 101 A. 2d at 823: "We find no such limitation in the language or purpose of [§ 62] and the last paragraph dealing with the interpleading of intermediate contractors when a claim is filed, is clearly predicated upon their liability for compensation."

accepted by this Court, are in accord with *The American Heritage Dictionary of the English Language* (1969) in which subcontract is defined as "A contract that assigns some of the obligations of a prior contract to another party", and subcontractor is said to be "A person who enters into a subcontract and assumes some of the obligations of the primary contractor." The meanings of the terms given in *Webster's Third New International Dictionary of the English Language* (Unabridged 1968) refer to two contracts. Subcontract is defined as "a contract under or subordinate to a previous or prime contract; *specif:* an agreement to perform a specified part or all of the work or to provide specified materials or all materials required for the completion of another contract." Subcontractor is defined as "an individual or business firm that contracts to perform part or all of another's contract." The view that there must be an original contract and a subsequent contract has been consistently expressed by this Court. In *State v. Bennett Building Co., supra,* we said at 166, 140 A. at 54-55:

> "Although acting independently of the other, the principal contractor and the subcontractor, with his workmen employed in the execution of the work, were each, in his own separate capacity, co-operating toward the execution of *the whole of a particular work which the principal contractor had promised to perform;* and the liability of the principal contractor to pay compensation to the employees of the subcontractor is confined to only these employees who were actually engaged in the execution of the whole or a portion of that one piece of work at the time of injury.
>
> It is this necessary employment of the employee of the subcontractor upon the piece of work *which the principal contractor has agreed to perform* that forms the basis of the statutory relation between the workman and the principal contractor, . . . ." (emphasis supplied)

*Long Co. v. State Accident Fund,* 156 Md. 639, 645, 144 A. 775, 778 (1929) declared flatly:

> "The meaning of section 62 is that, in order to create a principal contractor the statutory employer of a workman of a subcontractor, the subcontractor must be engaged in the work or a portion of the work *which the prinicpal contractor agreed to perform.* Or, in other words, to create the principal contractor a statutory employer he *must have contracted in the first instance to do the work himself,* and subsequently sublet the whole or a portion of it to someone else." (emphasis supplied)

Material part of the above assertions in *Bennett* and *Long Co.* was iterated in *State v. City of Baltimore, supra,* at 294, 86 A. 2d at 620. In *Warren v. Dorsey Enterprises,* 234 Md. 574, 200 A. 2d 76 (1964) there was an agreement between Free State and Dorsey whereby Dorsey was to furnish the track and operate all concessions at Dorsey Raceway except the actual conduct of stock car races which Free State agreed to stage, manage and produce. Warren, an employee of Free State, was injured while starting a race. He sought workmen's compensation from Free State and Dorsey. The Commission entered an award against both, finding they were jointly and severally liable. On appeal, the trial court affirmed the order as to Free State, but reversed it as to Dorsey. Warren appealed to the Court of Appeals. One of his contentions was that Dorsey was his statutory employer. We found that the trial court's holding that Dorsey was not a principal contractor and hence not a statutory employer of Warren under § 62 was supported by the evidence. We said, 234 Md. at 579, 200 A. 2d at 78:

> "The controlling point would seem to be that there was no agreement prior to the agreement with Free State that could be logically referred to as an antecedent undertaking, or principal contract. The section specifically refers to an undertaking by a principal contractor to execute work 'which he has contracted to perform.' *Roland v. Lloyd E. Mitchell,*

*Inc., supra; State v. City of Baltimore,* 199 Md. 289, 295; *Long Co. v. State Accident Fund,* 156 Md. 639, 645. Dorsey did not contract to produce or stage stock races."

What is missing in the case *sub judice* is a contract on the part of Miller to build the house. It is true that Miller contracted with Orndorff for Orndorff to install the roof, but that work was not part of any work which Miller had, in the words of the statute, "contracted to perform." Thus, the contract between Miller and Orndorff was not a subcontract. The contract did not assign to Orndorff some of the obligations of another contract; it was not an agreement to perform a specified part or provide specified materials required for the completion of another contract; it was not a contract under or subordinate to a previous or prime contract. As Miller did not owe labor or services under another contract for the work Orndorff agreed to execute, Miller was not "a principal contractor" and Orndorff was not "a subcontractor" with respect to the contract between them. Because the conditions prescribed by the statute did not exist, Miller did not become the statutory employer of Honaker. Therefore, Miller was not protected by the immunity provided by § 15 of the Act and Honaker was not limited to the remedies bestowed by the Act. The Honakers could maintain their action at law in tort against Miller. It follows that Miller was not entitled to judgment as a matter of law. We hold that the trial court erred in granting summary judgment.[5]

---

5. In ruling below, the trial court apparently accepted that the prescribed conditions existed for Miller to become the statutory employer of Honaker. It then considered the view that a principal contractor who is also the owner of the property on which work is being done should remain subject to third party liability in his capacity as owner. In rejecting that view, the court said that it did "not mean to imply that every owner of property who hires others to perform work upon the premises may claim immunity as a principal contractor. However, where a contractor is performing work within the business in which he is normally engaged, he is not amenable to suit in his role as owner by an injured employee." On appeal both Miller and Honaker agree that the issue is not whether Miller should be treated as a third party because it functioned in a second capacity as owner of the property and home but whether on the facts of the case Miller qualified as a statutory employer under § 62. Appellant's Brief at 7-8; Appellees' Brief at 7. In any event, as we have decided that the circumstances designated

In the light of our holding, the other question presented by appellants [6] need not be considered on this appeal.

*Judgment reversed; case remanded for further proceedings; costs to be paid by appellee.*

---

by § 62 to impose the absolute liability of an employer upon Miller were not shown to be present in this case, the "owner" point is not reached, and we express no opinion with respect to the trial court's comments thereon. For a discussion, however, of the application of "contractor-under" provisions as found in § 62 to "owners" and "entrepreneurs" *see* A. Larson, *The Law of Workmen's Compensation* (1973) vol. 1A, § 49.11, pp. 9-4 to 9-6 and vol. 2A, § 72.31, pp. 14-61 to 14-63 and § 72.80, pp. 14-112 to 14-123.

6. "Does the wife of a man who received workmen's compensation benefits for on-the-job injuries have a right to maintain in her own name or with her husband an action against the employer for loss of consortium, despite the award of benefits to her husband?"