# W. C. & A. N. MILLER DEVELOPMENT COMPANY
## v. DALLAS A. HONAKER ET UX.

[No. 1412, September Term, 1977.]

*Decided July 17, 1978.*

The cause was argued before MASON, WILNER and COUCH, JJ.

*Wade J. Gallagher,* with whom were *William H. Clarke, W. Barry Wraga* and *Galiher, Clarke, Martell & Donnelly* on the brief, for appellant.

*Ferdinand J. Mack* for appellees.

COUCH, J., delivered the opinion of the Court.

This case arises out of an injury received by a workman in the course of construction of a house in Montgomery County. A suit, alleging negligence, was brought against appellant, the general building contractor, by the workman and his wife. The workman was an employee of a subcontractor. Appellant pleaded the general issue and raised the defense of immunity under Art. 101, § 15 of the Maryland Workmen's Compensation law. A motion for summary judgment was filed by appellant and granted by the circuit court. This decision was reversed by the Court of Appeals, which remanded the case. *See Honaker v. W. C. & A. N. Miller Development Co.,* 278 Md. 453, 365 A. 2d 287 (1976). After curing what it perceived to be the defect causing the prior reversal, appellant again moved for summary judgment, which the trial court denied. The case proceeded to trial and the parties agreed to have the jury determine the issues of negligence and damages while the court would determine the main issue presented here; *i.e.,* was appellant the statutory employer of appellee within the meaning of Art. 101, § 62, Annotated Code of Maryland (1964 Repl. Vol.). The court denied appellant's motion for a directed verdict and the jury found appellant negligent and awarded damages. Thereafter the court denied appellant's motion for judgment n.o.v. The effect of the trial court's ruling was that appellant was held not to be the statutory employer of Mr. Honaker. This appeal followed, where appellant raises two questions:

(1) Was the defendant (appellant) the "statutory employer" of Mr. Honaker?

(2) If Mr. Honaker was a statutory employee of appellant may his wife maintain an action for loss of consortium against his statutory employer?

Judge Orth, with reference to the facts in *Honaker,* revealed:

"The facts are not complicated. Miller was erecting a house on property it owned in

Montgomery County, Maryland. It entered into a contract with Orndorff and Spaid, Inc. (Orndorff) whereby Orndorff agreed to furnish all labor and materials to install a roof on the house, gutters and downspouts, and a fireproof garage door, for a specified sum. Honaker was an employee of Orndorff. While working on the installation of the roof, Honaker sustained an accidental personal injury, alleged to be due to the negligence of Miller. Orndorff was covered by Workmen's Compensation insurance on the date of the accident under a policy issued by the State Accident Fund of Maryland. Honaker received Workmen's Compensation benefits from Orndorff through the Fund as a result of his injury."

With respect to the primary issue here, we find guidance from *Honaker* where Judge Orth also stated:

"It is manifest on the face of Sec. 62 of Art. 101,[1] that in order to invoke its provisions there must be:

(1) a principal contractor [footnote omitted]
(2) who has contracted to perform work
(3) which is a part of his trade, business or occupation; and
(4) who has contracted with any other party as a subcontractor for the execution by or under the subcontractor of the whole or any part of such work."

That Court found there was no evidence that Miller had contracted to perform work in the first instance, thus the contract between Miller and Orndorff was not a subcontract.

---

1. "When any person as a principal contractor, undertakes to execute any work which is a part of his trade, business or occupation which he has contracted to perform and contracts with any other person as subcontractor, for the execution by or under the subcontractor, of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the execution of the work any compensation under this article which he would have been liable to pay if that workman had been immediately employed by him . . . ."

They held Miller was not a "principal contractor", Orndorff was not a subcontractor, and since the conditions prescribed by the statute did not exist, Miller did not become the statutory employer of Honaker. In short, Miller did not enjoy the immunity provided by § 15 of the Article.[2]

Upon remand of the case to the trial court, appellant filed a second motion for summary judgment, attaching thereto certain affidavits and exhibits, including a "custom building contract" between it and Mr. and Mrs. DeJanikus, for whom the house was being built. Appellees, in opposing this motion, filed as an exhibit the building permit issued by the Montgomery County Department of Inspections and Licenses which showed appellant to be the owner-contractor. As noted above, appellant's motion was denied and the matter proceeded to trial.

The record reveals that evidence was presented directly, or by stipulation, to show that appellant was in the construction and building business trade, undertaking to construct completed buildings and to give prices to its customers based on completed buildings. There was evidence that appellant would subcontract some of the work, including the roofing work, and include the cost of any subcontractors in the total contract price. It was also brought out that appellant was the owner of the lot upon which the house was to be built. It was further shown that there was a good deal of negotiation as to what the house would contain, including the provision for a slate roof, between appellant and Mr. and Mrs. DeJanikus before the execution of the contract; additionally, there were some 26 "extra work orders" accepted by appellant in writing as work progressed. There was uncontradicted evidence that appellant had not done any roofing work on residential homes for approximately twenty years, nor did it have the employees or equipment to install slate roofs. Appellee also produced evidence that tended to show that no general contractor in the Washington area was equipped to do slate roofing, and that they all had to subcontract this work.

2. Art. 101, § 15: "... the liability prescribed in the last preceding paragraph shall be exclusive ...."

The thrust of appellant's argument on the basic issue is simply that it has supplied, on remand, that evidence which the Court of Appeals found missing in *Honaker; i.e.,* a contract between it and the DeJanikuses requiring it to perform work, a part of which it subcontracted out to appellee's employer. Appellant also contends that the Court of Appeals "implicitly" recognized that the work covered by the contract between appellant and appellee's employer was part of appellant's "trade, business or occupation" as required by Art. 101, § 62.

To these contentions appellee counters by arguing that the work subcontracted was not part of appellant's business, nor did the Court of Appeals so hold. Appellee also raises a sub-issue that as appellant was the owner of the land, and had not contracted to construct the house but was a seller, appellant could not be a "principal contractor" as contemplated by Art. 101, § 62.

Before beginning an analysis of the questions posed, we observe that by § 63 of Art. 101 the Legislature has provided a guidepost for all who would be called upon to interpret the article. Section 63 provides:

> "The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this article; but this article shall be so interpreted and construed as to effectuate its general purpose."

This Court, as well as the Court of Appeals, has stated in the past that the Workmen's Compensation Act should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. *Keene v. Insley,* 26 Md. App. 1, 337 A. 2d 168 (1975); *Bayshore Industries, Inc. v. Ziats,* 232 Md. 167, 192 A. 2d 487 (1963). We recognize that in giving this provision a liberal construction there will be instances where, as in this case, the employee will be found to be entitled only to workmen's compensation, excluding any possible common law recovery.

Keeping this principle in mind, we now examine the threshold question of whether a lot owner/builder/seller may

be a principal contractor. That question arises, of course, because of the evidence that appellant was the owner of the lot upon which the house was to be built and appellees claim that appellant only contracted to sell a completed house.

The evidence clearly shows appellant to be a builder of residential homes and as far as the DeJanikuses are concerned, a house built to the customer's specifications. The mechanism used, a "custom building contract" which included the terminology "memorandum of sale", does not, under the facts of this case, seem to require a conclusion that appellant could not qualify as a principal contractor under the Workmen's Compensation Act. There appears to be no case involving the precise issue previously decided in Maryland, and the few cases in other jurisdictions which have dealt with the issue land on both sides of the question. 2 A Larson, *Workmen's Compensation,* § 72.31. We believe the better logic requires a finding, on the facts presented here, that appellant is not disqualified from being a principal contractor merely because it owned the lot.

With respect to the main question, we conclude that the subcontracted work was a part of appellant's trade, business or occupation. There can be no question but that appellant was a builder of houses, nor can it be doubted that it always subcontracted out the roof installations; indeed, it had been doing so for some twenty years, and had neither the employees nor the equipment to furnish a slate roof. Appellee argues that before a contractor can be deemed a statutory employer, so as to enjoy immunity from a common law suit by an injured employee of a subcontractor, it must be shown that the subcontracted work was part of the contractor's trade, business or occupation, and the statute so requires. Appellee argues the relevant test in determining if the work is part of the contractor's trade or business is whether the subcontracted work was such as would ordinarily be done by the principal employer's own employees. *See* 1 A Larson, *The Law of Workmen's Compensation,* § 49.12, pages 9-12 (1973), wherein Professor Larson stated:

> "With a surprising degree of harmony, the cases applying these assorted phrases agree upon the

general rule of thumb that the statute covers all situations in which work is accomplished which this employer, or employers in a similar business, would ordinarily do through employees."

The test articulated by *Larson,* while adopted or followed in many states, is not the only test used in determining whether subcontracted work is part of the contractor's business. Several states have adopted the "essential or integral" part of the business test. The relevant inquiry under that test is whether the subcontracted work is an "essential or integral part of the principal contractor's business".

A review of the authorities in the states which have "statutory employer" statutes similar to Art. 101, § 62, reveals that, despite Larson's claim of a "surprising degree of harmony", a substantial number of states have adopted the "essential or integral part" test. The only valid generalization that can be made on concluding that review is that there is a substantial degree of non-uniformity among the states in terms of the tests that have been adopted.

Sixteen states have statutes similar to Maryland's in that they contain language to the effect: "business", or "business, trade or occupation", or "business, trade, occupation or profession".[3] Categorization of these states as to a particular test is difficult, as even within this group there is a substantial degree of non-uniformity.

We have found, however, that four states have definitively adopted the "essential or integral" part test or some comparable version. They are: Louisiana, *see Vincent v. Ryder Enterprises,* 352 So. 2d 1061 (La. App. 1977); *Foster v. Western Elec. Co.,* 258 So. 2d 153 (La. App. 1972); *Arnold v. Shell Oil Co.,* 419 F. 2d 43 (5th Cir. 1969); Massachusetts, *see Tindall v. Denholm & McKay Co.,* 347 Mass. 100, 196 N.E.2d 631 (1964) ("branch or department" of the business; "customarily carried on as part of the business"); New Mexico, *see Abbott v. Donathon,* 86 N. M. 477, 525 P. 2d 404 (1974) ("integral part"); and Oklahoma, *see Huffman v. Mobil*

---

3. Our review is limited to those jurisdictions having similarly worded statutes.

*Oil Corp.,* 554 F. 2d 1361 (5th Cir. 1977) ("integral and necessary part").

Connecticut has articulated both tests, seeming, however, to adopt the "essential part" test as the definitive test. The "employees" test is used as a device to arrive at the "essential part" test, and has been held to be "useful, but not necessarily conclusive". *Mancini v. Bureau of Public Works,* 167 Conn. 189, 355 A. 2d 32 (1974); *Fox v. Fafnir Bearing Co.,* 107 Conn. 189, 139 A. 778 (1928).

Two states have held that no test is capable of articulation. One of the states, South Carolina, applies concepts best described as fitting into the "essential and integral" part category. *Marchbanks v. Duke Power Co.,* 190 S. C. 336, 2 S.E.2d 825 (1939); *Mack v. R. C. Motor Lines,* 365 F. Supp. 416 (D.S.C. 1973) ("essential to business", "integral part", "usual and necessary"). The courts applying South Carolina law have also held that the fact that the work is customarily subcontracted out is no bar to statutory employer status. *Blue Ridge Rural Elec. Coop. v. Byrd,* 238 F. 2d 346 (4th Cir. 1956).

The other state refusing to articulate a definitive test, Missouri, has held that the factors to be considered are whether work is an essential or integral part and/or whether the contractor's employees usually perform the work. *Saale v. Alton Brick Co.,* 508 S.W.2d 243 (Mo. App. 1974).

Kansas has also applied both tests equally, articulating both so that if either the work is found to be an "integral part" *or* the "employees" test is satisfied, the contractor is held to be a statutory employer. *Woods v. Cessna Aircraft,* 220 Kan. 479, 553 P. 2d 900 (1976); *Hanna v. Cra, Inc.,* 196 Kan. 156, 409 P. 2d 786 (1966).

Only one state, Arizona, has adopted the "employees" test to the exclusion of all others. *Basurto v. Utah Constr. & Mining Co.,* 15 Ariz. App. 35, 485 P. 2d 859 (1971). In *Lee v. Chevron Oil Co.,* 565 P. 2d 1128 (Utah 1977), the Supreme Court of Utah, while citing cases that use both tests, apparently articulated the "employees" test as the more relevant one. The test applied to the facts in that case, however, suggests the "essential part" test.

Two states, Pennsylvania and Virginia, have articulated the "employees" test as the appropriate test, but have noted major exceptions to the application of that test. The major exception is where the contractor subcontracts work which he has a contractual duty to perform under the terms of his contract. *Pape v. Smith,* 227 Pa. Super. 80, 323 A. 2d 856 (1974); *Jamison v. Westinghouse Elec. Corp.,* 375 F. 2d 465 (3d Cir. 1967); *Shell Oil Co. v. Leftwich,* 212 Va. 715, 187 S.E.2d 162 (1972); *Williams v. E. T. Gresham,* 201 Va. 457, 111 S.E.2d 498 (1959). In *Jamison,* the court gives as an example of this exception a case very similar to the case at bar, noting that the contractor would be the statutory employer. A careful reading of *Leftwich* reveals the following as an exception to the general rule ("except in cases where the work is obviously a subcontracted fraction of a main contract"), indicating a *Jamison*-type exception.[4]

The Court of Appeals seems to have settled on the "essential or integral part" test, as shown in *State, Use of Reynolds, et al. v. City of Baltimore, et al.,* 199 Md. 289, 295, 86 A. 2d 618 (1952). There, one Rosoff contracted with the City to excavate and line a water tunnel, including all appurtenant construction necessary for the complete installation. Rosoff was required to provide cages, to be used for hoisting men and materials during construction, which operated on what are known as "headframes". Rosoff entered into a contract with Archer Iron Works, Inc. for fabrication and erection of the four headframes, complete and installed. Archer contracted with Phillips for the latter to supply ironworkers and equipment for the assembly and erection of the hoists and lifts. Weidman, an employee of Phillips, was killed during the work; thereafter, claims under the Workmen's Compensation Act were filed, awards passed and paid. Thereafter suits were filed under Articles 67 and 93 of the Code against the City and Rosoff by Weidman's dependents. The Court of Appeals affirmed the trial court's action in directing verdicts in favor of Rosoff because it

4. The remaining four states with similar statutes to our own — Kentucky, Montana, New Hampshire, and Wyoming — have not construed their statutes with respect to similar circumstances.

concluded the suits could not be maintained against Rosoff as a negligent third party under then Section 59, Article 101, of the Code (1947 Supp.), now Section 58. Appellants there contended that the law actions could be maintained because the work subcontracted was not a part of Rosoff's trade, business, or occupation, and, in so contending, cited authority that in part was based on the necessity to show that the work was such as would ordinarily be done by the contractor's own employees. The Court of Appeals, without specifically discussing this particular test, did find that "Removal of spoil is an essential part of a tunnel-digger's trade, business or occupation....This is true even though the subcontractor supplied is a *specialist* in its line." They also found that the furnishing of headframes was an integral part of Rosoff's undertaking.

As we have noted previously, the Workmen's Compensation Act must be liberally construed so as to effectuate the purposes of the Act. The legislature has mandated a broad view rather than a narrow one. In viewing the two tests for determining whether the subcontracted work was part of the trade, business or occupation of the appellant, and heeding what the Court of Appeals stated in *State Use of Reynolds v. City of Baltimore,* 199 Md. 289, 86 A. 2d 618 (1952), we hold that furnishing the roof on the house was an integral part of appellant's trade, business or occupation, and thus appellant was the statutory employer of appellee. Given this status as statutory employer, appellant enjoyed the same immunity under § 15 as did appellee's employer. Appellant's motion for directed verdict (and judgment n.o.v.) should, therefore, have been granted.

We answer appellant's second issue — whether the wife of an injured workman entitled to recover under the Act can maintain a common law action for loss of consortium — in the negative. It is now the law that the wife must join with her husband in bringing an action for loss of consortium due to her husband's injuries. *Deems v. Western Maryland Railway Co.,* 247 Md. 95, 231 A. 2d 514 (1967). We have previously concluded that Mr. Honaker has no cause of action at law but must use the exclusive remedy provided by the Workmen's

Compensation Act, under which Mrs. Honaker herself has no claim. *See Bloemer v. Square D Company,* 8 Ill. App. 3d 371, 290 N.E.2d 699 (1972) (and cases cited therein).

> *Judgments reversed.*
>
> *Case remanded for entry of judgment for costs in favor of appellant.*
>
> *Costs to be paid by appellees.*