**Phillip LUMPKINS, et. al.   Plaintiffs**

v.

**UNITED STATES of America, et. al.   Defendants.**

**No. CIV.A. CCB–01–2730.**

United States District Court, D. Maryland.

July 26, 2002.

William Francis Mulroney, Patrick Marlin Wysong, Ashcraft and Gerel, Baltimore, MD, for Plaintiffs.

Thomas M. DiBiagio, Michael A. DiPietro, Office of the United States Attorney, Baltimore, MD, Thomas G. Corcoran, Jr., Law Office, Washington, DC, Timothy E. Fizer, McNamara Fizer and Dent, Baltimore, MD, William Carlos Parler, Jr., Parler and Wobber LLP, Towson, MD, David A. Skomba, Andrew T. Stephenson, Franklin and Prokopik PC, Baltimore, MD, D. Stephenson Schwinn, Rachel Bob, Jordan Coyne and Savits LLP, Washington, DC, Dennis J. Lawson, Dechert Price and Rhoads, Washington, DC, Joan E. Burnes, Brett Schlossberg, Dechert, Philadelphia, PA, Thomas Joseph Cullen, Jr., Erica Ward Magliocca, Goodell DeVries Leech and Dann LLP, Baltimore, MD, for Defendants.

David A. Skomba, Baltimore, MD, Dennis J. Lawson, Dechert Price and Rhoads, Washington, DC, Joan E. Burnes, Brett Schlossberg, Dechert, Philadelphia, PA, for Third–Party Plaintiffs.

John P. Rufe, Law Officer of Ileen M. Ticer, Hunt Valley, MD, for Third–Party Defendants.

## *MEMORANDUM*

BLAKE, District Judge.

This case arises from injuries sustained by Mr. Phillip Lumpkins ("Lumpkins") during a construction accident occurring on the grounds of the National Institutes of Health ("NIH") in Bethesda, Maryland. Mr. Lumpkins and his wife have filed suit against, *inter alia*, Hill International, Inc. ("Hill") on theories of negligence and loss of consortium. Hill International has, in turn, filed a third party action against W.M. Schlosser Co., Inc. ("WMS"), which seeks to hold WMS liable for contribution and indemnity. WMS argues that it is immune from liability because of its status as the statutory employer of Phillip Lumpkins. WMS has moved therefore to dismiss the suit under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, or in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. The motions have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the court will grant the defendant's motion for summary judgment.

## *BACKGROUND*

During the early 1990s, NIH implemented a long term plan to improve and modernize the major utility distribution systems on its Bethesda campus. As part of this program, NIH entered into two main contracts. In 1993, NIH executed a contract with Hill International, Inc. ("Hill") to be the Construction Quality Manager ("CQM") for the project. In this role, Hill was to "manage the overall design, and construction phases, as well as, assist in the procurement phases of the various projects" involved in the improvement and modernization plan. (*See* Def. United States Mot. to Dism., Ex. 5, "NIH/Hill Contract," § C–2, ¶ 1.) In 1996, NIH contracted with WMS to be the principal contractor for the renovation of boilers # 1, # 2, # 3, and # 4 in Building 11. (*See* Def. WMS Mot. to Dismiss, Ex. 1, the "WMS/NIH Contract".) WMS, in turn, subcontracted much of the boiler renovation work to M & M Welding & Fabrication, Inc. ("M & M"). (*Id.* at Ex. 2, the "WMS/M & M Contract".) On August 17, 1999, Phillip Lumpkins, a welder/ boilermaker for M & M, and his son, Charles Lumpkins, were working on the boiler project in Building # 11. While the parties disagree about the precise cause of the accident, it is undisputed that as Mr. Lumpkins was standing on a section of grated walkway approximately 30 feet above the ground, the grating gave way, causing him to fall through the opening and hit two separate duct shafts before landing on the cement floor. Mr. Lumpkins has received workers' compensation from M & M and its insurer in accordance with Maryland law. (Def. United States Mot. to Dism., Ex. 4, "Workers' Compensation Commission Award," dated November 16, 1999.) On September 11, 2001, Mr. Lumpkins initiated the present suit against, *inter alia*, the United States and Hill International, requesting 3.5 million dollars in damages for the injuries he sustained.

## *STANDARD OF REVIEW*

Because both parties have submitted and argued matters outside the pleadings, the court will treat the motion to dismiss as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997) (*citing Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). The non-moving party may not rest upon mere allegations or denials in his pleadings, however, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Allstate Fin. Corp. v. Financorp. Inc.,* 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

### ANALYSIS

*1. Contribution*

In response to Hill's third party complaint to hold it liable for contribution, WMS argues that it is immune from liability because it was the statutory employer of Mr. Lumpkins under the Maryland Workers' Compensation Act ("MWCA"), *codified at* Md. Code Ann., Lab. & Empl. § 9–501 (2001), *et. seq.* The MWCA was enacted in 1914 to compensate workers injured in the course of their employment. *Brady v. The Ralph Parsons Co.,* 308 Md. 486, 520 A.2d 717, 723 (1987). As the Court of Appeals of Maryland has explained,

> [T]he statute struck a delicate balance between workers and employers: 'Workers lost their right to sue their employers for negligence but gained the right to quick and certain compensation for injuries sustained during the course of their employment, regardless of fault. *See Wood v. Aetna Casualty & Surety Co.,* 260 Md. 651, 660–61, 273 A.2d 125, 131 (1971); *Victory Sparkler Co. [v. Francks,]* 147 Md. [368, 376–77, 128 A. 635, 638 (1925).]* In return, employers lost their defenses of contributory negligence, assumption of risk, and fellow servant rule but gained the advantage of having their liability limited. *Wood, supra,* 260 Md. at 660–61, 273 A.2d at 131; *Victory Sparkler Co., supra,* 147 Md. at 376–377, 128 A. at 638; *see also* 2A. A. Larson, *The Law of Workmen's Compensation* § 65.11 (1983).'

*Brady,* 520 A.2d at 723 (*citing Johnson v. Mountaire Farms,* 305 Md. 246, 503 A.2d 708, 710 (1986)). *See also* Md. Code Ann., Lab. & Empl. § 9–501. An employer's liability under the MWCA is therefore exclusive. So long as she secures payment for compensation of injured employees as provided in the Act, she may not be sued for damages by an injured employee. *See* Md.

CODE ANN., LAB. & EMPL. § 9–509; *see also Brady*, 520 A.2d at 723 (*quoting* MD. CODE (1957) Art. 101 § 15); *Lowery v. McCormick Asbestos Co.*, 300 Md. 28, 475 A.2d 1168, 1174–76 (1984).

■ The term "employer" extends to a principal contractor where (1) the contractor has contracted to perform work which is a part of his trade, business or occupation, (2) the contractor has contracted with another party as subcontractor for the execution of the work, in whole or in part, and (3) the covered employee is employed in the execution of that work. *See* MD. CODE Ann., Lab. & Empl. § 9–508(a); *Para v. The Richards Group of Washington L.P.*, 339 Md. 241, 661 A.2d 737, 741–42 (1995) (*citing Honaker v. W.C. & A.N. Miller Development Co.*, 278 Md. 453, 365 A.2d 287, 291 (1976) (*Honaker I*)). The principal contractor's liability to the subcontractor's employee is commonly referred to as that of the "statutory employer" to a "statutory employee." *Honaker I*, 365 A.2d at 289. Since the worker's sole remedy against the statutory employer is a claim under the MWCA, "the employer is considered to be 'immune' from suit at law." *Brady*, 520 A.2d at 723. This immunity prevents suits against the employer not only by the employee, but by third parties who may be held liable to the employee as well. *See General Electric Co. v. U.S.*, 813 F.2d 1273, 1276 (4th Cir.1987), *vacated on other grounds*, 843 F.2d 168 (4th Cir.1988); *Baltimore Transit Company v. State, t/u/o Schriefer*, 183 Md. 674, 39 A.2d 858, 861 (1944) ("The employer should not be held liable indirectly in an amount that could not be recovered directly, for this would run counter to one of the fundamental purposes of the compensation law.").

WMS, having entered into a contract with NIH as a principal contractor, and contracted with Mr. Lumpkins's employer, M & M, as a subcontractor to perform all or part of the work undertaken therein, maintains that it has satisfied the necessary requirements for statutory employer status.[1] Hill, on the other hand, argues that WMS was not Mr. Lumpkins's statutory employer because Mr. Lumpkins was not working on the boiler replacement project when he was injured. Hill asserts instead that Mr. Lumpkins was "called in, after hours, to address a warranty issue that had arisen on a boiler previously delivered." (*See* Opp to Mot. to Dism., p. 4.) To support this allegation, Hill submits an affidavit from Mr. Michael Mologne, the Hill representative principally responsible for construction quality management on the boiler replacement and renovation project. (*See id.*, Ex. 1, "Affidavit of Michael Mologne," ¶¶ 3–6.) According to Mr. Mologne:

4. At the time of the accident, plaintiff was performing warranty work on boiler number 1. This warranty work was not within the scope of the work contained in the boiler replacement contract awarded to [WMS].

5. At the time of his injury, plaintiff was working after hours on a boiler that had already been replaced, delivered and accepted by NIH. Work on that phase of the boiler replacement project under the contract awarded to [WMS] was already complete.

(*Id.*) Thus, according to Hill, WMS is "exposed to potential liability like any other entity performing other work on the property at the time," because Mr. Lumpkins was working on a warranty issue instead of on the boiler replacement project at the time of his injury. (*See* Opp. to Mot. to Dism., p. 2.)

1. WMS also has secured the payment of compensation for injured employees by maintaining a policy of workers' compensation insurance. (*See* WMS Mot. to Dism., Ex. 4, "Certificate of Liability Insurance.")

■ As an initial matter, it is not clear that the "warranty work" being done by Mr. Lumpkins was actually "separate and apart from the boiler replacement project." (*See* Opp. to Mot. to Dism., p. 4.) The NIH/WMS contract calls for "Renovation and Modernization of Boiler Nos. 1,2,3, and 4," not merely replacement as Hill seems to suggest. (*See* WMS Ex. 1 "Contract Number 263–97–C–0231".) Even assuming, however, that the warranty work was distinct (as this court must in determining whether to grant summary judgment), a 'warranty' does not arise without the presence of a contract, and, regardless of whether Mr. Lumpkins was replacing a boiler or repairing one that had already been replaced, there still must have been some agreement between NIH and WMS for WMS to conduct such repairs. Moreover, regardless of whether the work was related to the boiler renovation project, Mr. Lumpkins was involved as a result of the subcontracting relationship between his direct employer (M & M) and WMS. Thus, WMS is still " 'a principal contractor' who has 'undertake(n) to execute ... work which is a part of his trade, business or occupation,' a part of which he has contracted with some 'other person as subcontractor' to perform.' " *Honaker v. W.C. & A.N. Miller Development Co.*, 285 Md. 216, 401 A.2d 1013, 1015–16 (1979) (*Honaker II* ) (*citing* MD. CODE ANN. (1957) Art. 101 § 62). The status of WMS as the statutory employer of Mr. Lumpkins is unchanged, and WMS is therefore immune from suit. Accordingly, summary judgment will be granted on the contribution claim.

*2. Indemnification*

■ A statutory employer may not be sued by a third party for indemnity absent an express indemnification agreement. *See Mason v. Callas Contractors, Inc.*, 494 F.Supp. 782, 784 (D.Md.1980) (*citing American Radiator and Standard Sanitary Corp. v. Mark Engineering Co.*, 230 Md. 584, 187 A.2d 864, 867 (1962)). Recognizing this, Hill contends, without any authority, that WMS may have agreed to indemnify NIH, and, if so, Hill is the "third party beneficiary" of such an agreement because it was an "agent" of NIH. Hill therefore requests the opportunity to conduct discovery on the issue of whether there was an indemnification agreement between NIH and WMS. The court will deny Hill's request.

■ "Ordinarily, 'a third party beneficiary contract arises when two parties enter into an agreement with the intent to confer a direct benefit on a third party, allowing the third party to sue on the contract despite the lack of privity.' " *Holzman v. Blum,* 125 Md.App. 602, 726 A.2d 818, 829 (1999) (*citing Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618 (1985)); *see also Century National Bank v. Makkar,* 132 Md.App. 84, 751 A.2d 1, 6 (2000) (*citing Marlboro Shirt Co. v. American Dist. Tel. Co.,* 196 Md. 565, 77 A.2d 776 (1951)). Hill has failed to set forth any evidence that it was intended as a third-party beneficiary of any of the agreements between WMS/NIH. An examination of the WMS/NIH Contract reveals only that Hill is the "Construction Quality Manager ... under contract with the Government [to] provide technical, contractual and administrative support to the Project Officer and the Contracting Officer for the purpose of this contract," (*see* Def. WMS Mot. to Dism., Ex. 1, the "WMS/NIH Contract," Section H, ¶ 5), and that Hill will be involved in the final inspection of the renovation work prior to its acceptance, (*see id.*, WMS/NIH Contract, Section E, ¶¶ 1, 2). There is no suggestion anywhere that the parties intended their agreement to confer a direct benefit on Hill. Moreover, even if Hill could properly be considered an "agent" of NIH because of its responsibility for conducting inspections on NIH's

behalf, an agency relationship does not necessarily create third-party beneficiary status. Since Hill has set forth no legal or factual basis for its claim to indemnification, the court will grant WMS's request for summary judgment.

A separate order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the motion to dismiss filed by third-party defendant W.M. Schlosser Co., Inc. (Docket No. 33) is **GRANTED**; and

2. copies of this Order and the accompanying Memorandum shall be sent to counsel of record.