WARREN *v.* DORSEY ENTERPRISES, INC. ET AL.

[No. 302, September Term, 1963.]

576

Decided May 5, 1964.

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and MARBURY, JJ.

*James A. Ehrhart* and *Thomas F. Dempsey*, with whom was *Herbert J. Arnold* on the brief, for the appellant.

*Charles R. Goldsborough, Jr., Special Attorney*, with whom were *Thomas B. Finan, Attorney General, J. Howard Holzer, Special Assistant Attorney General*, and *Paul J. Reed, Jr., Special Attorney*, on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The appellant was injured while starting a stock car race at the Dorsey Raceway. He filed a claim for workmen's compensation against the owner of the Raceway, Dorsey Enterprises, Inc., and Free State Stock Car Racing Association, Inc., a corporation conducting the races. The Commission entered an award against both Dorsey and Free State, finding that they were jointly and severally liable. On appeal, the trial court affirmed the order as to Free State, but reversed it as to Dorsey. The claimant appeals here. Free State did not appeal.

The appellant submits two theories of liability: (1) that Dorsey was engaged in a joint venture with Free State, and (2) that Dorsey is a statutory employer under Code (1957), Art. 101, sec. 62.

The agreement between Free State and Dorsey, introduced

into evidence, showed that Dorsey agreed to furnish the track, existing structures, police protection, a public-address system and announcer, an ambulance, a fire truck and a tow truck. Dorsey operated all concessions, except the actual conduct of the races. On the other hand, Free State agreed to "stage, manage and produce a program of * * * Stock Car Racing on each and every Friday during the term of this agreement." The members of the Free State Association owned their own cars, but Free State supplied an intercom broadcast system, and engaged and paid the officials of the track, including the starter, two scorers, the pit gateman and the pit steward. Dorsey sold tickets and divided the gate receipts on the basis of 40% less taxes to Free State. After paying its own expenses, Free State divided the balance of its share between the participating drivers, according to a scoring schedule. Free State also agreed to secure signed releases from all competitors, officials and employees of Free State, releasing Dorsey from damages arising out of the races, and to provide and maintain insurance coverage for all those signing releases. It was shown that the claimant received certain payments from that source, following the accident.

Free State hired the appellant in August, 1960, to act as starter. He was paid $25 per night. Free State furnished him lists of starters, but he furnished his own flags. On different days he worked as a starter at another track, although he was regularly employed as a mechanic by Anne Arundel County. He took his orders from Free State, but had the authority to disqualify any driver or to exercise his own judgment about starting any race.

The appellee contends that the question of joint venture was not presented below, and is not open here under Rule 885. It is true that the trial court did not mention the point specifically in his written opinion. He did, however, reverse the Commission's finding of joint and several liability. We think a finding that Dorsey and Free State were not engaged in a joint enterprise was implicit in the trial court's finding that they were not jointly liable. The order reversed so much of the Commission's decision as found that the claimant was an employee of Dorsey. It would therefore appear that the point was

decided below, although the record does not specifically show that it was tried on that particular ground.

In any event we think the contention is without merit. The Maryland cases have long recognized that joint venturers are essentially partners. *Atlas Realty Co. v. Galt,* 153 Md. 586, 590. Something more must be shown than a mere agreement to share profits. *Brenner v. Plitt,* 182 Md. 348, 355. See also *Hobdey v. Wilkinson,* 201 Md. 517, 525. Some of the cases stress the necessity that each participant have a voice in the management, or a right to exercise joint control. *Chisholm v. Gilmer,* 81 F. 2d 120, 124 (C.A. 4th). See also Note, 48 A.L.R. 1055, 1061. In the instant case Free State paid its own expenses and losses although it shared in the profits, represented by the gate receipts. But the claimant was not hired or paid by Dorsey, and under the terms of the agreement, Free State was to be solely responsible in case of his injury. We may assume that the release Warren executed was void under Code (1957), Art. 101, sec. 19(d). But Dorsey exercised no control over him whatever. Cf. *Anderson Nurs. Homes v. Walker,* 232 Md. 442, 444, and *Bashford v. Slater,* 108 N. W. 2d 474 (Iowa). *Baker v. Billingsley,* 132 N. E. 2d 273 (Ind.), appears to be distinguishable upon its facts relating to control. Nor was there any representation, express or implied, that Free State was acting as the agent of Dorsey and not on its own behalf. We think the finding of the trial court that Warren was not an employee of Dorsey was supported by the evidence.

We also think the trial court's finding that Dorsey was not the principal contractor, and hence not a statutory employer of Warren under Code (1957), Art. 101, sec. 62, was supported by the evidence. As pointed out in *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 19, the section contains a clause providing that the kind of work covered by a subcontract with regard to which a principal contractor becomes a statutory employer of a workman employed by a subcontractor shall be "work which is a part of his [the principal contractor's] trade, business or occupation * * *." Dorsey was not in the business of conducting races, but merely agreed to furnish its premises and facilities for a share of the gate receipts. Whether it would be jointly liable to an injured patron is not before us. See

Note, 37 A.L.R.2d 391, 406. The controlling point would seem to be that there was no agreement prior to the agreement with Free State that could be logically referred to as an antecedent undertaking, or principal contract. The section specifically refers to an undertaking by a principal contractor to execute work "which he has contracted to perform." *Roland v. Lloyd E. Mitchell, Inc., supra; State v. City of Baltimore,* 199 Md. 289, 295; *Long Co. v. State Accident Fund,* 156 Md. 639, 645. Dorsey did not contract to produce or stage stock car races. Thus, the agreement between Warren and Free State does not fall into the category of a subcontract, and the statutory provision is inapplicable.

*Order affirmed, with costs.*