524 A.2d 1228

**Joseph LATHROUM et ux.**

v.

**POTOMAC ELECTRIC POWER CO., INC. et al.**

**No. 140, Sept. Term, 1986.**

Court of Appeals of Maryland.

May 7, 1987.

David M. Williams, Chestertown, for appellants.

Kevin J. McCarthy (Charles E. Gallagher, Jr., on the brief), Upper Marlboro, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

COUCH, Judge.

## I

The Potomac Electric Power Company (PEPCO), the appellee, is a regulated public utility which furnishes electricity to consumers in Maryland and elsewhere.[1] PEPCO contracted with B. Frank Joy Company (Joy) to provide labor and miscellaneous services for several of PEPCO's power facilities, including the Chalk Point power plant.[2] On December 29, 1980, Joseph Lathroum (the appellant), an employee of Joy, was working as a laborer in an underground coal hopper at the Chalk Point power plant when he sustained the injury which is the subject of the present lawsuit.

---

1. *See* Maryland Code (1957, 1980 Repl.Vol.), Art. 78, § 28(c). *See also Everett v. Baltimore Gas & Elec. Co.*, 307 Md. 286, 513 A.2d 882 (1986) (and various sections of Title 20 of the Code of Maryland Regulations cited therein).

2. Joy is in the business of hiring and assigning workers to service the facilities of various companies on a contract basis.

The record reveals the following facts. During normal operations at the Chalk Point power plant, railroad cars operating at ground level dump coal into the underground hopper for transport to the furnaces. In cold weather, however, some of the lumps of coal may freeze together and lodge up against the walls of the hopper room. On the date in question, the appellant, stationed on a grate inside one of the hoppers, was instructed to clear the hopper by breaking apart the frozen lumps of coal.

According to the appellant, each time a railroad car would appear, a PEPCO employee at ground level would sound an alarm and initiate a verbal warning signaling the appellant to move away from the fall area where the coal would be dumped from above. Appellant alleges that while he was performing his coal-breaking responsibilities, certain PEPCO employees, as part of a joke, negligently dumped coal on appellant without sounding any warning causing serious injury.

Subsequently, the appellant and his wife[3] filed the present tort action against PEPCO[4] in the Circuit Court for Montgomery County.[5] Thereafter, PEPCO moved for summary judgment, arguing *inter alia* that it was the appellant's "statutory employer" and therefore the employee's exclusive remedy was under the Workmen's Compensation Act ("the Act"). In response, the appellant denied PEPCO was his "statutory employer." He also argued that PEPCO "contracted away or waived" any immunity afforded under the Act pursuant to its contract with Joy.

---

**3.** The appellant sued PEPCO on his own behalf and on behalf of Aetna Casualty & Surety Company. His wife Deborah joined him as a plaintiff in a loss of consortium claim.

**4.** Joy was also named as a defendant. The trial court dismissed the claims against Joy on statute of limitations grounds. That issue is not before the Court in this appeal, and we will not make any further mention of appellant's claims against Joy in this opinion.

**5.** The appellant has also filed a workers' compensation claim against Joy.

After hearing arguments, the trial court granted PEP-CO's motion for summary judgment. According to the court, "[t]here is nothing that has been filed in this case from which even an inference can be drawn that PEPCO was not the [appellant's] statutory employer." The court further concluded that PEPCO did not "contract[ ] away" its immunity under the Act.[6] Judgment was entered on December 5, 1985.

In an unreported per curiam opinion (No. 110, September Term, 1986, filed September 29, 1986), the Court of Special Appeals affirmed. We granted appellant's request for a writ of certiorari. We now reverse the judgment of the intermediate appellate court.

## II

We begin our analysis with *Brady v. Ralph Parsons Co.*, 308 Md. 486, 520 A.2d 717 (1987), which exhaustively reviewed the "statutory employer" provision of the Workmen's Compensation Act. In *Brady*, we reiterated that a "statutory employer" under section 62 of the Act is immune from a suit at law. An injured worker's exclusive remedy against this statutory creature is under the Act. *Brady*, 308 Md. at 502, 520 A.2d at 726. *See State v. City of Baltimore*, 199 Md. 289, 86 A.2d 618 (1952).

Quoting from *Honaker v. W.C. & A.N. Miller Development Co.*, 278 Md. 453, 365 A.2d 287 (1976) (*Honaker I*), we outlined in *Brady* the requirements for qualifying as a "statutory employer." There we stated that a "statutory employer" is:

1) a principal contractor

2) who has contracted to perform work

3) which is part of his trade, business or occupation; and

---

**6.** The trial court also dismissed abusive discharge claims against PEPCO on statute of limitations grounds. The appellant has not raised this issue on appeal.

4) who has contracted with another party as a subcontractor for the execution by or under the subcontractor of the whole or any part of such work.

*Brady,* 308 Md. at 503, 520 A.2d at 726 (footnotes omitted); *Honaker I,* 278 Md. at 460, 365 A.2d at 291. *Accord, Honaker v. W.C. & A.N. Miller Development Co.,* 285 Md. 216, 225, 401 A.2d 1013, 1017–18 (1979) (*Honaker II*); *Coffey v. Derby Steel Co.,* 291 Md. 241, 251, 434 A.2d 564, 569 (1981). Elaborating on this scheme, we noted that the statute requires two contracts. The first contract is between "the principal contractor and a third party whereby it is agreed that the principal contractor will execute certain work for a third party." *Brady,* 308 Md. at 504, 520 A.2d at 727 (quoting *Honaker I,* 278 Md. at 460, 365 A.2d at 291). This has been referred to as an "antecedent undertaking" or "principal contract." *Id.,* 520 A.2d at 727. *See Warren v. Dorsey Enterprises, Inc.,* 234 Md. 574, 579, 200 A.2d 76, 78 (1964). The second contract is between the "principal contractor and a person as subcontractor whereby the subcontractor agrees to do the whole or part of such work" that the principal contractor agreed to perform for the third party. *Brady,* 308 Md. at 504, 520 A.2d at 727 (quoting *Honaker I,* 278 Md. at 460, 365 A.2d at 291). The work covered by the second contract (i.e., the subcontract) must be work which is a part of the principal contractor's trade, business or occupation. *Id.,* 520 A.2d at 727. *See Warren,* 234 Md. at 578, 200 A.2d at 78; *Coffey,* 291 Md. at 251–56, 434 A.2d at 570–72; *Honaker II,* 285 Md. at 229–32, 401 A.2d at 1019–20.

Summarizing section 62 in *State v. Bennett Building Co.,* 154 Md. 159, 166, 140 A. 52, 54–5 (1928), we said:

"Although acting independently of the other, the principal contractor and the subcontractor, with his worker employed in the execution of the work, were each, in his own separate capacity, co-operating toward the execution of the whole of a particular work which the principal contractor had promised to perform [for a third party]."

*See Long Co. v. State Accident Fund,* 156 Md. 639, 645, 144 A. 775, 778 (1929) ("to create the principal contractor a statutory employer he must have contracted in the first instance to do the work himself, and subsequently sublet the whole or a portion of it to someone else").

## III

The appellant's principal contention in this appeal is that PEPCO cannot be his "statutory employer" because there is no "principal contract" or "antecedent undertaking" between PEPCO and a third party. In support of this argument, appellant focuses on the various contracts recognized by law and distinguishes between express and implied in fact contracts, and quasi-contracts (or contracts implied in law). According to appellant, the "statutory employer" provision *only* contemplates express contracts and implied in fact contracts, whereas the contractual relationship between PEPCO and the public is one implied in law. He states:

> "The [*Honaker*] contract must be express, or at least one implied in fact where there is a real agreement involving the essential elements of contract such as assent, bargain and a meeting of the minds. The quasi-contractual principal of unjust enrichment or remedy for restitution does not apply to agreements deliberately entered into as was intended in *Honaker* situations by this Court." (citations omitted).

■ While we agree with the appellant's contention that a principal contract between PEPCO and a third party is absent in this case, we reach our conclusion on somewhat different grounds. Where the appellant focuses on contract law, we prefer to focus on the intent of the legislature. In a long line of cases in this Court beginning with *State v. Bennett Building Co.* in 1927, we have never remotely recognized the type of relationship PEPCO contends is sufficient to give rise to an "antecedent undertaking" or "principal contract." In our view, the legislature never intended a "principal contract" to arise where there is a

statutory duty [7] on the part of a public utility to provide a regulated commodity to the public. Our cases make clear that the "principal contract" contemplated by the legislature is one in which a contractor agrees for stated consideration to perform some work or service according to plans, specifications or directions of a third party. *See, e.g., Long Co. v. State Accident Fund,* 156 Md. at 643, 144 A. at 777; *State v. City of Baltimore,* 199 Md. 289, 86 A.2d 618 (1952); *Kegley v. Vulcan Rail & Construction Co.,* 203 Md. 476, 478, 101 A.2d 822 (1954); *Dorsey Enterprises,* 234 Md. at 579, 200 A.2d at 78; *Honaker I,* 278 Md. at 460–61, 365 A.2d at 291–92; *Brady,* 308 Md. at 505 n. 22, 520 A.2d at 727 n. 22.

Clearly, PEPCO's alleged contractual relationship with the public fails to meet this definition. PEPCO is not performing any work or service according to customer specifications or direction; it is merely providing a regulated commodity pursuant to statutorily mandated requirements. If indeed there is a contract in this case, it is more akin to a contract for the sale of a product,[8] which this Court has concluded is not within the contemplation of the "statutory employer" provision of the Act. *See Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 18, 155 A.2d 691, 696 (1959); *State v. City of Baltimore,* 199 Md. at 295–96, 86 A.2d at 620–21.

Our conclusion is in accord with cases from other jurisdictions that have a workmen's compensation statute similar to our own. *See, e.g., Manning v. Georgia Power Co.,* 252 Ga. 404, 314 S.E.2d 432 (1984) (electrical utility is not a "statutory employer" because it is not acting as a contractor for another entity); *Florida Power & Light Co. v. Brown,* 274 So.2d 558 (Fla.Dist.Ct.App.1973) (same). In

---

**7.** *See supra* note 1.

**8.** We do not mean to suggest, one way or the other, that the sale of electricity to the public is governed by the Maryland Uniform Commercial Code, Md.Code (1975, 1986 Cum.Supp.), Commercial Law § 2–105(1).

*Florida Power & Light Co. v. Brown,* for example, the plaintiff was an employee of the T.D. McClure Co. (McClure), an electrical contractor, at the time of the accident involved in that case. McClure was hired as an independent contractor by the Florida Power & Light Co. (FPL) to provide alternate electrical feed to electrical power vaults in order to supply power to a shopping complex, the Pompano Fashion Square. While plaintiff was working in one of the vaults, he touched a terminator thought to be de-energized and received 13,000 volts of electricity. Sustaining serious injury, the plaintiff recovered workers' compensation from McClure and thereafter brought suit against FPL as the negligent owner of the electrical distribution system. A substantial monetary verdict was returned in favor of the plaintiff.

On appeal, FPL argued that it was immune from suit because it was a "contractor" [or "statutory employer"] under the Florida Workmen's Compensation Act. Rejecting this contention, the court concluded that the "negotiations between the owners of the Fashion Square and F.P.L. did not result in the type of contractual obligation contemplated by the [Workmen's Compensation] statute." *Id.* at 561 (citations omitted). Relying on *Jones v. Florida Power Corp.,* 72 So.2d 285 (Fla.1954), an identical decision rendered several years earlier by the Florida Supreme Court, the intermediate appellate court stated:

> "Our Supreme Court has noted that in order for a person or company to so qualify as a 'contractor' its primary obligation in performing a job or providing a service must arise out of a contract. The primary obligation of F.P.L., as a public utility, to provide power to its customers in the case before us did not arise out of a contract between the Fashion Square and F.P.L., even assuming such a contract existed.[9] F.P.L.'s primary obligation arises out of a statute rather than a contract."

9. At this point, the court stated in a footnote: "An assumption we do not necessarily make herein." *Brown,* 274 So.2d at 560 n. 3.

*Brown,* 274 So.2d at 560 (citations omitted). *See Williams v. Pan American World Airway,* 448 So.2d 68 (Dist.Ct. App.1984) ("Pan American is not a 'statutory employer' because its 'primary obligation' in transporting luggage arises not out of its countless individual contracts, that is, the tickets, with its passengers, but from generalized statutory and common law requirements that it do so."). The Florida court further concluded that the type of antecedent contract covered by the "statutory employer" provision was one in which "the contractor agree[d] for a stated consideration to construct an improvement or perform the work in accordance with agreed plans or specifications." *Id.* (quoting *State v. Luckie,* 145 So.2d 239 (Fla.Dist.Ct.App.), *cert. denied,* 148 So.2d 278 (1962)).

PEPCO relies on *Wyatt v. Potomac Electric Power Co.,* 64 Md.App. 614, 498 A.2d 278 (1985) to support its contention that it was the "statutory employer" of the appellant. In our view, however, *Wyatt* provides no support since there was no disputed issue there such as exists in the present case. Moreover, the decision in *Wyatt* is inconsistent with the conclusion we reach here.

### IV

According to the Court of Special Appeals, the documents in support of, and opposed to, PEPCO's motion for summary judgment "reveal[ ] that no genuine dispute was generated in the circuit court regarding the fact that Pepco has a contractual agreement with the public to provide utility service." [10] The court further noted:

---

**10.** In its brief, PEPCO advances a similar argument:
"Appellants have woefully failed to produce one iota of evidence to create any genuine dispute as to a material fact as required by Md.Rule 2–501 regarding whether Pepco has a contractual agreement with the public to provide electricity."
The intermediate appellate court's conclusion that a "principal contract" is present in this case is based on PEPCO's response to one of the appellant's interrogatories:
"8. State in detail and particular, the nature of any and all contractual relationships between you and the employer of the [appellant]

> "The only instance where [appellant] disputes the existence of an antecedent or principal contract, other than in his argument to this Court, is in his Supplemental Response to Defendants' Motions for Summary Judgment. There, he baldly alleges that '[t]here is no contract between Pepco and some third party....' This unsworn, unsupported statement is not sufficient to raise a genuine dispute of fact concerning Pepco's status as a principal contractor."

We are troubled by these conclusions. First, the court's statement ignores the appellant's initial answer to the motion for summary judgment, wherein he clearly stated: "Plaintiff is adamant that PEPCO is not a 'contractor' under the [Workmen's Compensation] statute. Private corporations furnishing services to the public are required by law to do so and the elements of contract do not exist." More significantly, our conclusion rests on the idea that whatever contractual relationship may have existed between PEPCO and its customers, it was not the type of relationship that the legislature contemplated when it enacted the "statutory employer" provision of the Workmen's Compensation Act. Therefore, even assuming the absence of a genuine issue of material fact concerning the contractual relationship between PEPCO and the public, PEPCO was not entitled to summary judgment *as a matter of law.* Md. Rule 2–501(e).

---

(B. Frank Joy Company) on the date of the alleged accident in December of 1980.
Answer: This Defendant contracts with both residential and commercial users throughout the Washington metropolitan area to supply electric power. In conjunction with performing these contracts, certain duties which were a part of and a necessary function of performing this contract to supply power were contracted to B. Frank Joy Company, prior to, at the time of and since this incident. Our relationship with B. Frank Joy was therefore one of prime or general contractor or subcontractor."
Indeed, this is the only evidence in the record on this point.

## V

■ Since PEPCO does not have a "principal contract" or "antecedent undertaking" with a third party, it is not a "statutory employer" of the appellant under section 62 of the Act. PEPCO stands in no different position than any third party liable to suit at law under section 58. Accordingly, PEPCO was not entitled to judgment as a matter of law, and the circuit court's entry of summary judgment was improper.[11]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. COSTS TO BE PAID BY APPELLEES.*

---

11. In light of our holding, we do not reach the appellant's remaining contentions for reversing the judgment of the Court of Special Appeals. Furthermore, we do not intimate that all of the other *Honaker* conditions needed to establish a "statutory employer" relationship were met here.