559 A.2d 376

**INNER HARBOR WAREHOUSE AND DISTRIBUTION, INCORPORATED, et al.**

v.

**Gordon L. MYERS**

**No. 1167, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

June 29, 1989.

Certiorari Granted Nov. 13, 1989.

2

Alan M. Carlo (Donahue, Ehrmantraut & Montedonico, Chartered, on the brief), Baltimore, for appellants.

Laurence A. Marder (Israelson, Salsbury, Clements & Bekman, on the brief), Baltimore, for appellee.

Argued before MOYLAN, GARRITY and WENNER, JJ.

GARRITY, Judge.

In this appeal, a principal contractor contends that the lower court erred in holding it responsible under Section 62 of Art. 101 of the Code for obtaining workers' compensation coverage for the owner of an uninsured subcontracting company. The owner was injured while transporting goods on behalf of the principal contractor.

In resolving the issue of coverage we shall determine the following: whether the failure of a controlling shareholder and officer of a subcontracting close corporation to purchase workers' compensation insurance for the corporation's employees acts as an election not to be covered by Maryland's workers' compensation provisions;[1] whether a controlling shareholder and officer of a close corporation

---

1. By Ch. 279, Acts of 1984, the term "workmen's compensation" is synonymous with "workers' compensation." *See* Md.Code Ann. art. 101, § 14A (1957, 1985 Repl.Vol., 1988 Cum.Supp.).

may be a "statutory employee" within the meaning of the "statutory employer" provision of the workers' compensation laws; and, whether the limitations period applicable to workers' compensation claims is tolled when a "statutory employer," with actual notice of serious injuries sustained by an individual acting as its "statutory employee," does not file a report of injury with the Workmen's Compensation Commission.[2]

The action giving rise to the foregoing questions had its genesis on or about December 22, 1986, the date the appellee, Gordon L. Myers, filed a claim with the Commission alleging that he had sustained compensable injuries while acting as an employee of the appellant, Inner Harbor Warehouse and Distribution, Inc.[3] After hearing, the Commission disallowed Myers' claim because it determined that he was an independent contractor at the time his injuries were incurred. Upon the denial of his motion for rehearing, Myers appealed the Commission's decision to the Circuit Court for Baltimore City. By order dated August 9, 1988, that court (Arabian, J.) granted Myers' motion for partial summary judgment, ruling, *inter alia*, that Myers was the "statutory employee" of Inner Harbor pursuant to Md.Ann. Code art. 101, § 62 (1957, 1985 Repl.Vol., 1988 Cum.Supp.), as a matter of law.[4]

Before addressing the propriety of the trial court's ruling, we shall recount the undisputed facts.

---

**2.** This court was also asked to consider "whether Section 62 of Article 101 of the Annotated Code of Maryland required that contracts be in writing for a principal contractor/subcontractor relationship to exist." As Inner Harbor conceded on this issue during oral argument, however, we shall not consider it here.

**3.** Inner Harbor's insurer, Safeguard Insurance Company, was also a party defendant below and is an appellant in this case.

**4.** The lower court expressly determined that its order was a "full and final judgment." *See* Md.Cts. & Jud.Proc.Code Ann. § 12–301 (1974, 1984 Repl.Vol., 1988 Cum.Supp.).

## FACTS

Commencing during July 1984, Inner Harbor was retained by Eluma International, U.S.A., a/k/a Eluma of North America (Eluma), to transport engine blocks manufactured by a Brazilian company, Cofap Cia Fabricadora de Pecas, a/k/a Cofap S.A. (Cofap), on an ongoing basis upon the products' arrival in the Port of Baltimore. Inner Harbor was hired to haul the engine blocks in their containers from the Port of Baltimore to Inner Harbor's warehouse facility—where the containers were to be temporarily stored. Inner Harbor received compensation per container hauled from the Port of Baltimore to the warehouse facility. As Inner Harbor did not own trucks capable of hauling the containers, it retained the services of truck owners and truck operators who hauled the containers on its behalf. Representatives of Inner Harbor admitted that performing truck transportation services was part of the regular business of Inner Harbor during the time period relevant to this case.

During the relevant time period, G.K. Myers & Sons, Inc., a Maryland Close Corporation, was in the business of retaining truck operators for truck transportation companies such as Inner Harbor. Myers was the President and Chief Executive Officer of G.K. Myers & Sons and, along with his wife, held joint title to all of the corporation's outstanding shares of common stock.

Between April 1984 and October 18, 1984, Myers and other drivers of G.K. Myers & Sons operated trucks which hauled containers of the Brazilian engine blocks on behalf of Inner Harbor. During April 1984, Myers met with Reese Beane, the President and Chief Operating Officer of Inner Harbor, and requested that Inner Harbor provide workers' compensation insurance for the drivers of G.J. Myers & Sons' trucks while they were hauling on behalf of Inner

**6**

Harbor.[5]

On October 18, 1984, Myers was hauling a container of the engine blocks from a pier in the Port of Baltimore to Inner Harbor's warehouse facility. While Myers was travelling along the Russell Street ramp at or near Monroe Street in the City of Baltimore, the engine blocks sprung free, upsetting the container. As a result, the container and the truck—with Myers inside—fell over the side of the ramp and eventually landed upon a line of train tracks.[6]

Representatives of Inner Harbor were notified of the accident shortly after it occurred. At the time of the accident, G.K. Myers & Sons did not carry workers' compensation insurance.[7]

## DISCUSSION

### I. Scope of Review

As a threshold matter, we shall discuss our role in reviewing the trial court's entry of summary judgment for Myers.

According to Md.Rule 2–501(e), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." In determining whether any factual dispute exists, even if the underlying facts are undisputed, the trial court must resolve all inferences against the moving party. *See Honaker v. W.C. & A.N. Miller Dev. Co.*, 285 Md. 216, 231, 401 A.2d 1013 (1979) (*Honaker II*) and cases there cited.

---

5. The parties dispute how Beane responded to Myers' request. Resolution of that fact, however, is not material to the issues *sub judice.*

6. G.K. Myers & Sons was the title owner of the truck Myers was driving at the time of the accident.

7. Inner Harbor has made no allegation, nor is there any proof indicating, that Myers engaged in fraud or misrepresentation regarding G.K. Myers & Sons' uninsured status.

In reviewing a grant of summary judgment, we must also decide whether there is a genuine dispute as to any material fact, with inferences drawn in favor of the non-moving party, and whether the moving party is entitled to judgment as a matter of law. *See Liscombe v. Potomac Edison Co.*, 303 Md. 619, 621–22, 495 A.2d 838 (1985); *Washington Homes v. Interstate Land Dev. Co.*, 281 Md. 712, 717–18, 382 A.2d 555 (1978) and cases there cited.

## II. Election

Inner Harbor posits that the trial court erred in failing to conclude that the decision by Myers not to purchase workers' compensation insurance for the subcontracting close corporation of which he was a controlling shareholder and officer acted as an election to be exempted from the coverage of the workers' compensation provisions as a matter of law.

Art. 101, § 21(b) details the individuals who are subject to the provisions of the workers' compensation laws. That section relates, in pertinent part, as follows:

COVERAGE OF EMPLOYEES.—The following shall constitute employees subject to the provisions of this article,

. . . . .

(2) Every officer of a corporation rendering services for the corporation for monetary remuneration except: (i) an officer of a close corporation, as defined in the Corporations and Associations Article, electing not to be covered under the provisions of Section 67(4) of this article. . . .

Art. 101, § 67(4)(ii) sets forth the procedure whereby an officer of a close corporation may elect to become exempt from coverage as an "employee" under the workers' compensation laws:

Any officer of a close corporation, as defined in the Corporations and Associations Article, . . . may elect to become exempt from coverage as an employee under the provisions of Section 21(b) of this article. In the event of such an election, the employer shall serve upon the employer's insurance carrier and upon the Commission writ-

ten notice naming the persons electing not to be covered, and every officer of a close corporation shall be an employee within this article until such notice has been served.

In the instant case, there is no factual dispute that Myers was an officer of a close corporation "rendering services for the corporation for monetary remuneration." Furthermore, it is uncontroverted that written notice naming Myers as an officer of a close corporation electing to become exempt from coverage as an "employee" under the workers' compensation laws was never served upon the Commission.

The above facts notwithstanding, Inner Harbor presently urges us to interpret G.K. Myers & Sons' uninsured status as, *ipso facto*, an election by Myers to exempt himself from coverage as an "employee" under the workers' compensation laws. Because this case reaches us in the context of a motion for summary judgment, we accept as true Inner Harbor's contention that G.K. Myers & Sons' lack of workers' compensation insurance resulted directly from Myers' decision not to procure such coverage for the close corporation.

Inner Harbor's averment raises an issue of first impression in this State. The resolution of the question requires us to discern the meaning and scope of Section 67(4)(ii).

In considering the provision, it is well settled that we must ascertain and carry out the real and actual intent of the legislature. *See Scott v. State,* 297 Md. 235, 245, 465 A.2d 1126 (1983); *State v. Loscomb,* 291 Md. 424, 429, 435 A.2d 764 (1981). The primary source for determining that intent is the language of the statute itself. If it is clear, we need look no further. *Ryder Truck Lines, Inc. v. Kennedy,* 296 Md. 528, 535, 463 A.2d 850 (1983); *Vallario v. State Roads Comm'n,* 290 Md. 2, 6, 426 A.2d 1384 (1981). Thus, where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, no construction or clarification is needed or permitted. *Hornbeck v. Somerset Co. Bd. of Educ.,* 295 Md. 597, 619, 458 A.2d 758

(1983); *Blum v. Blum,* 295 Md. 135, 140, 453 A.2d 824 (1983); *Koyce v. State, Cent. Collection Unit,* 289 Md. 134, 140, 422 A.2d 1017 (1980). In other words, a plainly worded statute should be construed without forced or subtle interpretations designed to extend or limit the scope of its operation. *State v. Intercontinental, Ltd.,* 302 Md. 132, 137, 486 A.2d 174 (1985); *Guy v. Director,* 279 Md. 69, 72, 367 A.2d 946 (1977).

Furthermore, we are mindful that the Workers' Compensation Article is to be construed as liberally in favor of injured employees as the article's provisions will permit so as to effectuate its benevolent purpose as remedial social legislation. *See, e.g., Lovellette v. Mayor of Baltimore,* 297 Md. 271, 282, 465 A.2d 1141 (1983); *Soper v. Montgomery County,* 294 Md. 331, 335, 449 A.2d 1158 (1982); *Trotta v. County Car Center,* 292 Md. 660, 663, 441 A.2d 343 (1982); *Howard County Ass'n for Retarded Citizens v. Walls,* 288 Md. 526, 530, 418 A.2d 1210 (1980); *Wiley Mfg. v. Wilson,* 280 Md. 200, 217, 373 A.2d 613 (1977); *Tavel v. Bechtel Corp.,* 242 Md. 299, 303, 219 A.2d 43 (1965); *Bethlehem–Fairfield Shipyard, Inc. v. Rosenthal,* 185 Md. 416, 425, 45 A.2d 79 (1945). *See also* Art. 101, § 63.

We believe the language of Section 67(4)(ii) is plainly worded and unambiguous and expresses a sensible meaning in detailing the mechanism by which an officer of a close corporation may elect not to be covered by the workers' compensation laws. The provision also clearly provides that until written notice is served according to its dictates, "every officer of a close corporation shall be an employee within this article." In light of the foregoing, we hold that the trial court did not err in concluding that Myers did not elect to exempt himself from coverage.

### III. Myers as "Statutory Employee"

Inner Harbor further contends that the trial court erred as a matter of law in finding Myers, a controlling shareholder and officer of G.K. Myers & Sons, a "statutory employ-

ee" of Inner Harbor within the meaning of the "statutory employer" provision of the workers' compensation laws.

As a means of introducing the law relevant to the present issue, we observe that the Maryland Workers' Compensation Act was enacted by the General Assembly in 1914 to compensate employees who were injured in the course of their employment. Under the act, workers lost their right to bring suit against their employers for negligence, but gained the right to compensation for injuries sustained during the course of their employment, regardless of fault. *Brady v. Ralph Parsons Co.*, 308 Md. 486, 496, 520 A.2d 717 (1987). *Accord Johnson v. Mountaire Farms*, 305 Md. 246, 250, 503 A.2d 708 (1986); *Wood v. Aetna Casualty & Surety Co.*, 260 Md. 651, 660–61, 273 A.2d 125 (1971); *Victory Sparkler Co. v. Francks*, 147 Md. 368, 376–77, 128 A. 635 (1925); *Anderson v. Bimblich*, 67 Md.App. 612, 616–17, 508 A.2d 1014 (1986). In return, employers lost their defenses of contributory negligence, assumption of risk, and fellow servant rule, but gained the advantage of having their liability limited. *Brady*, 308 Md. at 496–97, 520 A.2d 717. *Accord Mountaire Farms*, 305 Md. at 250, 503 A.2d 708; *Wood*, 260 Md. at 660–61, 273 A.2d 125; *State v. Bennett Building Co.*, 154 Md. 159, 168, 140 A. 52 (1928); *Victory Sparkler*, 147 Md. at 376–77, 128 A. 635.

First included in the Workers' Compensation Act two years after its original passage in 1914, Art. 101, § 62, as presently enacted, states in pertinent part:

When any person as a principal contractor, undertakes to execute any work which is a part of his trade, business or occupation which he has contracted to perform and contracts with any other person as subcontractor, for the execution by or under the subcontractor, of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the execution of the work any compensation under this article which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed

from or proceedings are taken against the principal contractor, then, in the application of this article, reference to the principal contractor shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed.[8]

The purpose and scope of Section 62 has been addressed by the appellate courts of this State on numerous occasions. *See, e.g., Lathroum v. Potomac Elec. Power Co.,* 309 Md. 445, 524 A.2d 1228 (1987); *Brady v. Ralph Parsons, supra; Honaker v. W.C. & A.N. Miller Dev. Co.,* 278 Md. 453, 365 A.2d 287 (1976) (*Honaker I*); *State v. Bennett Building, supra; Travelers Indem. Co. v. Insurance Co. of North America,* 69 Md.App. 664, 519 A.2d 760 (1987); *Anderson v. Bimblich, supra.*

In *Bennett Building,* the Court explained the legislative rationale of the provision. As its analysis is highly relevant to our resolution of the present issue, we shall repeat it in full:

It is common practice in certain trades for one party to agree for a reward to complete a certain work or undertaking and then to enter into subcontracts with various parties providing for the execution by them respectively of specified parts of the whole work or undertaking, so that the whole or part thereof would be done by such subcontractors and their assistants. In this manner the

---

8. Section 62 further provides:

Where the principal contractor is liable to pay compensation under this section, he shall be entitled to indemnity from any employer, who would have been liable to pay compensation to the employee independently of this section, and shall have a cause of action therefore against such employer.

Nothing in this section shall be construed as preventing a workman from recovering compensation under this article from the subcontractor instead of from the contractor.

Whenever an employer of a subcontractor files a claim under this article against the principal contractor, the principal contractor shall have a right to join the subcontractor or any intermediate contractors as defendant or co-defendant in this case.

principal contractor would avoid in part the responsibility for accidents happening in the carrying out of the work or undertaking. If this responsibility were so shifted upon parties too weak financially to meet it, and who had not secured compensation to their employees in one of the ways required by the statute, an injured workman, proceeding at common law or under the Workmen's Compensation Act, would obtain neither compensation nor damages. Furthermore, difficult questions arose with reference to whether the workman was the servant of the principal contractor rather than of his immediate employer, depending largely upon who had power to hire and discharge, to direct and control the workmen, and a variety of other circumstances. In order to obviate these contingencies, and more certainly to assure the workman his contemplated compensation, the statute has imposed, under a certain state of circumstances, a liability to pay upon the principal contractor, although he might not have been held at common law the employer of the injured workman.

154 Md. at 161–62, 140 A. 52. The Court summarized the consequences of Section 62:

The effect of this provision, when brought into operation through the designated state of circumstances, is to impose the absolute liability of an employer upon the principal contractor, when he was not in law the employer of the injured workman. The result then is that where the prescribed conditions exist, the principal contractor becomes by the act the statutory employer of any workman employed in the execution of the work.

154 Md. at 162, 140 A. 52.[9]

In *Honaker I,* Judge Orth, writing for the Court, explicated the elements necessary to establish statutory employment as contemplated by the section:

---

9. In *Brady,* the Court reiterated that it is common to speak of the principal contractor's liability under Section 62 as that of a "statutory employer" to a "statutory employee." 308 Md. at 501, 520 A.2d 717.

It is manifest on the face of [Section 62], that in order to invoke its provisions there must be:

(1) a principal contractor

(2) who has contracted to perform work

(3) which is a part of his trade, business or occupation; and

(4) who had contracted with any other party as a subcontractor for the execution by or under the subcontractor of the whole or any part of such work.

278 Md. at 459–60, 365 A.2d 287 (footnote omitted).[10] *Accord Brady*, 308 Md. at 503–04, 520 A.2d 717; *Coffey v. Derby Steel Co.*, 291 Md. 241, 251, 434 A.2d 564 (1981); *Anderson*, 67 Md.App. at 617, 508 A.2d 1014. Elaborating upon the foregoing elements, the Court has observed that the section actually requires the existence of two contracts:

The first contract is between "the principal contractor and a third party whereby it is agreed that the principal contractor will execute certain work for a third party." *Honaker I*, 278 Md. at 460, 365 A.2d at 291. This has been referred to as an "antecedent undertaking" or "principal contract." *See Warren v. Dorsey Enterprises, Inc.*, 234 Md. 574, 579, 200 A.2d 76, 78 (1964). The second contract is between the "principal contractor and a person as subcontractor whereby the subcontractor agrees to do the whole or part of such work" that the principal contractor agreed to perform for the third party. *Honaker I*, 278 Md. at 460, 365 A.2d at 291. The work covered by the second contract (i.e., subcontract) must be work which is a part of the principal contractor's trade, business or occupation. *See Warren*, 234 Md. at 578, 200 A.2d at 78.

*See Honaker I*, 278 Md. at 456, 365 A.2d 287; *Anderson*, 67 Md.App. at 617, 508 A.2d 1014; 1C A. Larson, The Law of Workmen's Compensation § 49.13 (1986).

**10.** The Court pointed out in *Honaker I* and *Honaker II* that the term "principal contractor" is not synonymous with "general contractor." *Honaker I*, 278 Md. at 460 n. 4, 365 A.2d 287; *Honaker II*, 285 Md. at 225, 401 A.2d 1013.

See also *Coffey*, 291 Md. at 251–56, 434 A.2d at 570–72; *Honaker II*, 285 Md. at 229–32, 401 A.2d at 1019–20.

*Brady*, 308 Md. at 504–05 (footnotes omitted).

█ Under the facts of the case at bar, it is uncontroverted that Inner Harbor acted as a principal contractor in agreeing to provide transportation services to a third party (Eluma). In addition, representatives of Inner Harbor admitted that the work their company agreed to perform for Eluma was a part of Inner Harbor's regular trade or business. Finally, there is no genuine factual dispute that Inner Harbor subcontracted with various trucking concerns—including G.K. Myers & Sons—to do all or part of the work which Inner Harbor had agreed to perform under its agreement with Eluma. It is clear, therefore, that Inner Harbor falls within the ambit of the "statutory employer" provision with respect to the employees of the various trucking concerns which acted as subcontractors on its behalf.

Despite the foregoing, Inner Harbor attempts to avoid Section 62 liability in the present matter on the ground that Myers' status as a controlling shareholder and officer of G.K. Myers & Sons precludes his being classified as a "statutory employee" within the contemplation of the provision.

The issue of first impression raised by Inner Harbor's position requires that we construe Section 62. In interpreting the provision, we again recognize the general rules of statutory construction detailed *supra*. We also again observe that Section 21(b) of the workers' compensation laws generally confers "employee" status upon officers of close corporations who perform services for the corporation for monetary remuneration.[11]

---

11. The applicability of the provision is not limited by the ownership interest an officer of a close corporation holds in the corporation or the particular officer position which is held.

■  In light of the foregoing, we are of the view that the pertinent language of Section 62 plainly and unambiguously expresses a legislative intent to protect every employee of any subcontractor which, for whatever reason, is too financially weak to secure compensation for its workers.  We believe that such an intent unquestionably follows from the enactment of a "statutory employer" provision which, without limitation, places the onus upon the principal contractor to provide workers' compensation coverage for the employees of its subcontractors.

With regard to the present case, we believe that to exclude Myers from the protections of Section 62 merely because he was a controlling shareholder and officer of a subcontracting close corporation would fly in the face of the legislature's intent to afford protection to the employees of subcontractors.  Consequently, we are convinced that Myers' status as a controlling shareholder and officer of one of Inner Harbor's subcontractors does not alter its burden to provide coverage.  We hold, therefore, that the trial court acted correctly in concluding that Myers was a "statutory employee" of Inner Harbor within the meaning of Section 62.

## IV.  Limitations

As its final contention on appeal, Inner Harbor argues that, notwithstanding its "statutory employer" status, Myers' workers' compensation claim is barred by the statute of limitations as a matter of law.[12]  In particular, Inner Harbor contends that the trial court erred in determining that the running of the limitations period was tolled as a result of Inner Harbor's failure to file an Art. 101, § 38(b) employers' first report of injury.  The crux of Inner Harbor's position on this point is that, as a Section 62 "statutory employer," it had no obligation to file a Section 38(b) report.

---

**12.**  Myers argues that Inner Harbor waived its right to raise the limitations defense.  Our review of the record, however, causes us to reject that contention.

Initially, we observe that Art. 101, § 39(a), which details the limitations period applicable to workers' compensation claims filed in this State, provides, in pertinent part, "[t]hat failure of an employee to file a claim for compensation within two years from the date of the accident shall constitute a complete bar to any claim under this article."

The application of the Section 39(a) limitations period, however, must be considered in light of other provisions of the Workers' Compensation Article so as to effectuate the article's benevolent purpose as remedial social legislation. *See, e.g., Lovelette,* 297 Md. at 282, 465 A.2d 1141; Art. 101, § 63. In that regard, we are cognizant that Section 38(b) of the article, which, under certain circumstances, requires an employer with notice of an accident occurring to any employee to file a report with the Commission, provides as follows:

REPORT OF ACCIDENT BY EMPLOYER.—Whenever an accident causing disability for a period more than three days following the happening of such accident occurs to any employee, it shall be the duty of the employer within ten (10) days after the receipt of notice of such accident, oral or written, to report such accident and injury resulting therefrom to the Commission. Such report shall state (1) the time, cause and nature of the accident and injuries, and the probable duration of the injury resulting therefrom; (2) whether the accident arose out of and in the course of the injured persons employment; (3) any other matters and rules and regulations as the Commission may prescribe.

Furthermore, and at the heart of our analysis of the present issue, we are aware that Section 38(c) of the article, which details the consequences of an employer's failure to file a Section 38(b) report with the Commission, provides:

EFFECT OF EMPLOYER'S FAILURE TO FILE REPORT AFTER HAVING BEEN GIVEN NOTICE.—Where the employer has been given notice, or the employer, or his designated representative in the place where the injury occurred, has knowledge of any injury or death of

any employee, and the employer fails, neglects or refuses to file a report thereof, as required by the provisions of subsection (b) of this section, the limitations prescribed by this article shall not begin to run against the claimant or any person entitled to comr ᵎsation until such report shall have been furnished as required by subsection (b) of this section. This section shall not apply to an "employee" as defined by Section 67(3) of this article.

◾ Considering the foregoing provisions of the workers' compensation laws as a statutory scheme and again recognizing the rules of statutory construction set forth *supra*, we are convinced that Section 38(c) clearly and unambiguously manifests a legislative intent to toll the Section 39(a) limitations period when an employer, with notice of a serious accident occurring to any employee, fails to file a Section 38(b) report of injury.

In the present case, we have already determined as a matter of law that Inner Harbor was the Section 62 "statutory employer" of Myers. Thus, the question as significant to our resolution of the issue *sub judice* is whether the obligations and consequences which Section 38 visits upon an employer whenever an accident causing certain disabling injuries occurs to any employee, apply to a Section 62 "statutory employer" whenever such an accident occurs to any "statutory employee." We believe the answer to that question turns upon a determination of the extent to which Section 62 equates a "statutory employer" with any other employer under the article.

Thus, we must again consider that portion of Section 62 which provides that:

[T]he principal contractor shall be liable to pay any workman employed in the execution of the work any compensation under this article which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal contractor, then, in the application of this article, reference to the

principal contractor shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed.

The provision was construed in the context of a related issue by the Court in *State v. Bennett Building, supra.* The claimant in that case sought to bring a third party tort action against a principal contractor under Section 38 of the workers' compensation laws on the theory that the principal contractor was "some person other than the employer" against which a third party tort action could be brought. As we have noted above in the context of another issue raised by Inner Harbor, the Court, in rejecting the claimant's averment, held:

> The effect of this provision, when brought into operation through the designated state of circumstances, is to impose the absolute liability of an employer upon the principal contractor, when he was not in law the employer of the injured workman. The result then is that where the prescribed conditions exist, the principal contractor becomes by the act the statutory employer of any workman employed in the execution of the work.

154 Md. at 162, 140 A. 52.

In light of the foregoing, we believe that Section 62 plainly and unambiguously expresses a definite and sensible meaning in manifesting a legislative intent to treat a "statutory employer" as if it were the employer of any "statutory employee" for purposes of liability. We conclude, therefore, that an employer's duty to file a Section 38(b) report of injury upon receiving notice of an injury occurring to any employee, and the consequences of failing to take such action, apply with equal force to a Section 62 "statutory employer" whenever an accident causing the requisite disabling injuries occurs to any "statutory employee."

Applying the foregoing to the instant case, it is uncontroverted that Inner Harbor had notice of Myers'

injuries immediately after the accident occurred. Furthermore, there is no dispute as to whether the accident caused disability to Myers "for a period of more than three days" after it occurred. Accordingly, Inner Harbor, as the Section 62 "statutory employer" of Myers, had an obligation to file a Section 38(b) report with the Commission regarding Myers' injuries. As Inner Harbor failed to file such a report, the Section 39(a) limitations period applicable to Myers' claim was tolled pursuant to Section 38(c).

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.